UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MIGUEL DIAZ,

                                                   Plaintiff,

-vs-

BRANDON ROBERTS, SGT. A. SNYDER,
NURSE L. BUSCH, LT. S. SKAWENSKI,
BARBARA LAHRS, MATTHEW R.
RATAJCZAK, JOSHUA BERRY, ROBERT
KOEPF, TIMOTHY FOSTER,

                                              Defendants.

_____

DECISION and ORDER

19-CV-6872 CJS

## INTRODUCTION

Miguel Diaz ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983")[1] maintaining that the defendants violated his federal constitutional rights.   Now before the Court are the following motions: 1) Defendants' Motion to Dismiss the Amended Complaint (ECF No. 37); 2) Plaintiff's Motion for Summary Judgment (ECF No. 40); and 3) Plaintiff's Motions to Add Defendants (ECF Nos. 48, 57, 58).   As discussed more fully below, Defendants' Motion to Dismiss is granted in part and denied in part; Plaintiff's Motion for Summary Judgment is denied; and Plaintiff's Motions to Add Defendants are granted in part and denied in part.

---

[1] Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

BACKGROUND

Unless otherwise indicated the following facts are taken from the Amended Complaint, documents incorporated into Plaintiff's pleadings, and other documents which are integral to the pleading.  This action arises from incidents that occurred on October 8, 2019, at Attica Correctional Facility ("Attica"), as staff at Attica were preparing to transport Plaintiff from Attica to Auburn Correctional Facility ("Auburn").[2]  On that day, Attica staff maintained that Plaintiff had refused to obey numerous commands to come out of his cell, and had blocked his cell door with a mattress.  Corrections staff consequently performed a "cell extraction," which involved spraying chemical agents into the cell and then having a team of officers enter the cell to restrain and remove Plaintiff.  Corrections staff further maintained that Plaintiff subsequently also refused to comply with a strip search, which required them to forcibly strip search him and inspect his anal cavity for contraband.[3]  Plaintiff contends that he was injured during the cell extraction, when officers used excessive force and "beat him to the ground," and was sexually assaulted during the strip search when officers penetrated him anally with a foreign object.  Plaintiff alleges that he sustained serious injuries during the sexual assault, and was paralyzed for several hours.  Plaintiff further alleges that despite his obvious injuries, a nurse at Attica failed to examine or treat him.[4]  In sum, Plaintiff alleges that he experienced three

---

[2] The transport of Plaintiff from Attica to Auburn was apparently to facilitate Plaintiff's appearance at a local court near Auburn.

[3] See, ECF No. 40 at p. 7 ("Inmate Diaz was ordered to comply with the strip frisk procedure prior to a draft out.  Inmate Diaz . . . refused to comply with the strip frisk and refused to physically move.  Inmate Diaz was placed on a clean floor covering mat and Officer Foster using single use latex gloves spread the inmate's buttocks with both of his hands for visual inspection of inmate Diaz's anal cavity, confirming no contraband was concealed.").  The Court cites this document only to provide background for the complained-of incidents, and does not take as true the allegation that Plaintiff was refusing orders from staff.

[4] Following those events, Plaintiff was transported to Auburn as scheduled, where he claims he was similarly denied medical attention.

separate types of injury at Attica in violation of his rights under the Eighth Amendment: 1) sexual assault; 2) excessive force; and 3) denial of medical treatment.[5]

The following day, October 9, 2019, Plaintiff filed an inmate grievance at Attica alleging those same injuries.[6]  In response to the grievance, on October 18, 2019, the DOCCS Inmate Grievance Supervisor sent a memorandum to Plaintiff (ECF No. 1 at p. 17), observing that, because Plaintiff's grievance alleged both a sexual assault and other injuries of a non-sexual nature, his grievance claims would be severed and handled in two ways: The sexual assault claim would be handled through DOCCS' Prison Rape Elimination Act ("PREA") procedures, rather than the Inmate Grievance Program ("IGP"), while the other claims (excessive force, denial of medical treatment) would be "treated as a separate grievance logged as #A-76366-19" and processed through the normal IGP procedures, with a filing date of October 18, 2019.[7]  The Memorandum further stated that the sexual abuse claim would be deemed administratively exhausted without further action by Plaintiff for purposes of 42 U.S.C. § 1997e(a). *See*, ECF No. 1 at p. 17 ("The grievance shall be deemed exhausted upon filing for Prison Litigation Reform Act (PLRA) purposes.").

Subsequently, on January 9, 2020, Attica First Deputy Superintendent Patricia Ciulla ("Ciulla") denied grievance #A-76366-19.   Plaintiff evidently received Ciulla's

---

[5] *See*, Complaint (ECF No. 1) at p. 13 ("On 10.8.19 during a cell extraction in OBS #7 cell I was physically & sexually assaulted then denied medical treatment by the nurse on site.").

[6] Plaintiff also filed a grievance at Auburn, but only the Attica claims are at issue in this action. *See*, Complaint (ECF No. 1) at pp. 2-3. 6-7; Amended Complaint (ECF No.9) at pp. 2-3, 6-7.

[7] *See*, ECF No. 1 at p. 17 ("Your grievance [#A-76365-19] contains allegations of sexual abuse or sexual harassment as well as additional timely matters unrelated to sexual abuse or sexual harassment.  Your complaint will be treated as two separate grievances.  The sexual abuse/sexual harassment allegations will be treated as a separate grievance logged as #A-76366-19 and will be processed in accordance with Directive #4040.  You will not receive a response to your sexual abuse/sexual harassment complaint through the [IGP] mechanism.").

determination on January 27, 2020, and immediately filed an appeal to the Central Office Review Committee ("CORC"), which was received by CORC on January 29, 2020.[8]  On June 4, 2020, CORC denied Plaintiff's appeal of grievance A-76366-19,[9] at which point the grievance was administratively exhausted.

However, long before grievance #A-76366-19 was exhausted, Plaintiff commenced this action.  Specifically, Plaintiff filed this action on November 19, 2019, just one month after the filing date assigned to grievance #A-76366-19.  Plaintiff filed the subject action using a form complaint for prisoner Section 1983 actions.  When asked on the form whether he had filed a grievance concerning his claims, Plaintiff checked "yes." When asked, "If yes, what was the result?," Plaintiff wrote "Pending."[10]

Four months later, on March 19, 2020, Plaintiff filed the Amended Complaint (ECF No. 9), which is now the operative pleading in this action.  The Amended Complaint also indicated that Plaintiff's inmate grievance was still "pending."  Indeed, as noted earlier, grievance #A-76366-19 was not exhausted until June 4, 2020, almost two months after the Amended Complaint was filed.

The original Complaint in this action sued Attica Superintendent Joseph Noeth ("Noeth"), DOCCS Chief Medical Officer John Morley ("Morley"), DOCCS Commissioner Anthony Annucci ("Annucci"), Corrections Lieutenant S. Skawenski ("Skawenski"), Corrections Sergeant A. Snyder ("Snyder"), Corrections Officer Brandon Roberts ("Roberts"), Nurse L. Busch ("Busch"), and "John Does 1-7."  The Court's initial screening order (ECF No. 7) dismissed Noeth, Morley and Annucci from the action, for failure to

---

[8] ECF No. 49, Exhibit A.
[9] *See*, Attorney's Declaration in Surreply, ECF No, 49, attaching the entire grievance packet.
[10] ECF No. 1 at pp. 6-7; ECF No. 9 at pp. 6-7.

plead their personal involvement in the alleged constitutional violations, but permitted the case to proceed as to the remaining defendants. The Amended Complaint similarly sued Skawenski, Snyder, Roberts, Busch and John Does 1-7. The Court screened the Amended Complaint and permitted it to proceed as to those defendants, and requested, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) ("*Valentin*"), that the Office of the New York State Attorney General attempt to obtain the names of the seven John Doe defendants, and forward them to the Court's Pro Se Unit. (*See*, Order, ECF No. 11). The Court indicated that upon receiving such names, the Amended Complaint would be "deemed amended to reflect the full names of the John Doe Defendants." Subsequently, after Plaintiff had received initial disclosures from Defendants, he indicated that he was naming the following persons as defendants in place of the "John Doe" defendants: Barbara Lahrs ("Lahrs"), Matthew Ratajczak ("Ratajczak"), Joshua Berry ("Berry"), Robert Koepf ("Koepf"), Timothy Foster ("Foster") and Superintendent Noeth. *See*, ECF Nos. 16-17. On June 2, 2020, the Clerk of the Court added those individuals as defendants and issued summonses for them. The Clerk's addition of Noeth as a defendant, however, was in error, as Noeth, who was dismissed from the action by the Court's initial screening order, was clearly not one of the seven "John Does." Subsequently, in response to a letter from Defendants' counsel pointing out this error, the Court once again terminated Noeth as a defendant. *See*, ECF Nos. 51 & 52.

On September 21, 2020, defendants Berry, Foster, Roberts, Skawenski and Snyder filed the subject motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). The Notice of Motion did not mention the other Defendants listed

above.  In support of the motion, the movants simply noted that Plaintiff's failure to exhaust was apparent from the face of the Amended Complaint, inasmuch as it admitted that Plaintiff's grievance was still "pending," and thus not exhausted.  In that regard, the movants drew no distinction between the sexual assault claim and the other claims, and requested dismissal of the Amended Complaint in its entirety.

On September 29, 2020, Plaintiff filed a response indicating, first, that he "did in fact exhaust [his] administrative remedies," and, second, that Defendants' motion should be denied as to the "several defendants" not named in the Notice of Motion.[11]  With regard to his contention that he exhausted his administrative remedies, Plaintiff attached a document purportedly indicating that he filed an appeal of the denial of his inmate grievance with CORC on December 9, 2019, a month after he commenced this action. However, besides failing to show administrative exhaustion prior to commencement of this action, that document actually pertained to a different grievance that Plaintiff had filed at Auburn Correctional Facility, not Attica.[12]

On August 7, 2020, Plaintiff filed additional documents (ECF No. 35) purportedly as exhibits in support of a motion for summary judgment.  In pertinent part, the submission asked that "C.O. D. Mezydlo" ("Mezydlo") be added as a defendant in this action in place of one of the John Doe defendants, since he was personally involved in the use of force on August 8, 2019.  Specifically, Plaintiff attached a report indicating that Mezydlo had been present during the use of force. (ECF No. 35 at pp. 2-5).

---

[11] Plaintiff maintained the motion to dismiss should be denied as to Noeth, Koeph, Ratajczak and Busch, along with "R. Loeph," whose name, as far as the Court can determine, appears nowhere else in the docket.  Consequently, the Court assumes that the reference to "R. Loeph" was a typographical error.
[12] *See*, ECF No. 39 at p. 2 (Grievance AUB-77122-19).  Any claim that Plaintiff may have involving events at Auburn is not part of this action.

On October 9, 2020, Plaintiff filed a document (ECF No. 40) captioned as a Motion for Summary Judgment on the merits of his claims. In response to this filing, the Court indicated that it would consider the submission as part of Plaintiff's response to Defendants' motion to dismiss. *See*, ECF No. 41.

On November 20, 2020, Defendants filed an Amended Notice of Motion (ECF No. 42), clarifying that the Motion to Dismiss was intended to have been filed on behalf of all defendants, namely, Berry, Foster, Roberts, Skawenski, Snyder, Busch, Koepf, Lahrs and Ratajczak. Also on November 20, 2020, Defendants filed a Reply Memorandum of Law (ECF No. 43) arguing that Plaintiff's purported Motion for Summary Judgment should be denied, and that Defendants' Motion to Dismiss should be granted *in part*, as to the claims for excessive force and deliberate indifference to a serious medical need. Defendants acknowledged, however, that Plaintiff's claim of sexual assault was fully exhausted and therefore should not be dismissed. *See*, ECF No. 43 at p. 6 ("[B]ecause Plaintiff's claim of sexual abuse is the only one that he fully exhausted, that is the only claim that should be permitted to proceed.").

According to the Court's Motion Scheduling Order (ECF No. 38), briefing of the Motion to Dismiss was complete upon the filing of Defendants' Reply. Nevertheless, between December 28, 2020, and January 6, 2021, Plaintiff filed three additional documents (ECF Nos. 46, 47, 48) purporting to show that he had exhausted his administrative remedies. According to Plaintiff, the documents demonstrated that CORC had received his appeal on October 18, 2019, but had not decided the appeal within thirty days thereafter, resulting in his grievance being deemed exhausted prior to his

commencement of this action.[13]   (The original Complaint is signed and postmarked on November 19, 2019).   Although, Plaintiff's assertion is incorrect on its face, as the document to which he cites indicates that his *grievance* was filed on October 19, 2019, not his appeal to CORC.

Additionally, Plaintiff insisted (ECF No. 48) that the Court had mistakenly failed to add Noeth as a defendant and to issue a summons for him.   Plaintiff also requested that "C.O. Munez" ("Munez") be added as a defendant, though he did not explain who Munez was or why he should be added as a defendant. Rather, concerning Munez, Plaintiff merely stated:  "Please have . . . C.O. Munez, whos first name can be found in the packet that the Court had the AAG send in showing all previous John Doe defendants and the many letters I sent in with his full name attached." ECF No. 48-1 at p. 3.   However, the Court does not find Munez's name referenced in any document filed in this action besides ECF No. 48.

On January 7, 2021, Defendants field a "Surreply" (ECF No. 49) consisting of an attorney's affirmation and exhibits comprising the entire packet of documents ("grievance packet") relating to the filing and exhaustion of Plaintiff's excessive force/denial of medical care grievance, A 76366-19.   In pertinent part, those documents indicate that Plaintiff's grievance was filed on October 18, 2019; denied by the Attica Superintendent on January 9, 2020; and denied by CORC on June 4, 2020.

## APPLICABLE LEGAL PRINCIPLES

### Plaintiff's *Pro Se* Status

---

[13] *See*, ECF No. 47 ("[This] document clearly shows [that] CORC got my appeal on 10-18-19 and by New [York] Law had up till 11-17-19 to respond which they did not, and I filed my claim accordingly in 12-2019. So the AAG's motion must be denied.") (The Court again observes that Plaintiff actually filed this action November 21, 2019, not in December 2019).

Plaintiff is proceeding *pro se*. Accordingly, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

<u>Plaintiff's Motion for Summary Judgment Under Fed. R. Civ. P. 56</u>

Plaintiff has moved for summary judgment pursuant to Fed. R. Civ. P. 56 as to all his claims. This is Plaintiff's second pre-discovery request for summary judgment, after the Court summarily denied his first such request (ECF Nos. 28 & 35) as premature on August 11, 2020. *See*, ECF No. 36 ("Plaintiff's Motion for Summary Judgment (ECF Nos. 28 & 35) is denied as premature. Issue has not been joined and no discovery has taken place.").

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts

9

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Here, Plaintiff's motion is still premature, and also fails to demonstrate his entitlement to judgment as a matter of law. Consequently, the application (ECF No. 40) is denied. Plaintiff will have an opportunity to file a further motion for summary judgment once discovery is completed.

<u>Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)</u>

Defendants have moved for dismissal of the Amended Complaint under Rule 12(b)(6),[14] based on Plaintiff's alleged failure to exhaust his administrative remedies, as to the claims for excessive force and denial of medical care, before commencing this action as required by 42 U.S.C. § 1997e(a). In that regard, inmates and pretrial detainees are required to exhaust administrative remedies *before* asserting a federal claim in federal court complaining about jail or prison conditions. *See*, 42 U.S.C.A. § 1997e(a) ("No action

---

[14] The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear: "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

If administrative remedies were "available" to the inmate plaintiff,[15] then he must have "properly" exhausted his remedies:

> Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S.Ct. 2378 (2006), internal quotation marks omitted).

"[A] prisoner need not specifically plead or demonstrate exhaustion in the complaint because failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Rucker v. Giffen*, No. 20-1318, 997 F.3d 88, 2021 WL 1803655 (2d Cir. May 6, 2021) (citation and internal quotation marks omitted). However, a court may dismiss an action where it is apparent from the face of the complaint that the plaintiff did not comply with § 1997e(a):

> "The PLRA instructs that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust administrative remedies is an affirmative defense under the

---

[15] "Prisoners are exempt from the exhaustion requirement when administrative remedies are unavailable. An administrative procedure is unavailable when (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is so opaque that it becomes, practically speaking, incapable of use; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Amaker v. Bradt*, 745 F. App'x 412 (2d Cir. Dec. 19, 2018) (citations and internal quotation marks omitted). Here, there is no dispute that administrative remedies were available to Plaintiff.

PLRA, not a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir.2013). Accordingly, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216, 127 S.Ct. 910. However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement. *See id*. at 215, 127 S.Ct. 910."

*Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

When deciding a Rule 12(b)(6) motion, the Court may not rely on matters outside of the complaint. Fed.R.Civ.P. 12(d).  Nevertheless, "a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ..., [and] if a complaint relies heavily upon [a document's] terms and effect, that document is rendered 'integral' to the complaint and may be considered on a motion to dismiss." *Safran Elecs. & Def. SAS v. iXblue SAS*, 789 F. App'x 266, 270 (2d Cir. 2019) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)) (internal quotation marks omitted).

In the instant case, when considering Defendants' motion to dismiss for failure to exhaust administrative remedies the Court has considered the "grievance packet" relating to Attica Grievance #A-7636-19, portions of which have been filed and cited by all parties without objection. [16] *See, e.g., Solano v. New York*, No. 920CV01378BKSML, 2021 WL 4134793, at *3–4 (N.D.N.Y. Sept. 10, 2021) ("Courts have found grievance documents to be incorporated by reference or integral to a complaint that alleges having filed a grievance.  Furthermore, Plaintiff does not object to the inclusion of the grievance packet

---

[16] CORC's denial of the grievance occurred after the Amended Complaint was drafted, and therefore was not technically integral to the pleading.  However, the other documents in the grievance packet are integral.

or contest its authenticity. Plaintiff's counsel submitted an affirmation stating that the grievance records were attached to Defendants' motion, and Plaintiff cited to, and relied on the grievance in his opposition to the motion to dismiss. . . . In light of the reference made to the grievance in Plaintiff's complaint, applicable case law, the acquiescence of both parties to the consideration of the grievance packet, and Plaintiff's reliance on the packet in his opposition, the Court will consider the grievance packet in resolving the present motion.") (citations omitted). The Court will also consider the exhibits attached to the original Complaint, which Plaintiff did not re-file with the Amended Complaint, apparently not for any strategic reason but simply because he had already filed them.[17]

Turning to the merits of Defendants' motion, which the Court deems to have been brought on behalf of all the currently-named Defendants (Roberts, Snyder, Busch, Skawenski, Lahrs, Ratajczak, Berry, Koepf and Foster), it is clear, first of all, that the motion must be denied as to Plaintiff's sexual assault claim, since that claim was deemed exhausted for PLRA purposes prior to the commencement of this action. As noted earlier, on October 18, 2019, DOCCS notified Plaintiff that his sexual assault claim was deemed exhausted for purposes of 42 U.S.C. § 1997e(a), pursuant to 7 N.Y.C.R.R. § 701.3(i). Defendants now concede that point.

However, it is also clear, from the faces of both the original Complaint and the Amended Complaint, that Plaintiff did not exhaust his claims for excessive force and

---

[17] The Court is able to consider the attachments to the original complaint in resolving the instant motion. *See, Commey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548, at *1 n. 2 (S.D.N.Y. Aug. 11, 2022) ("Given Plaintiff's *pro se* status, the Court finds it appropriate to consider any relevant facts that he raises throughout his pleadings and affidavits. *Cf. Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ('0A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.'); *Briggs v. SCO Fam. of Servs.*, No. 16-CV-3882 (GRB) (SIL), 2021 WL 7209010, at *2 (E.D.N.Y. Oct. 20, 2021) (considering a pro se plaintiff's allegations set forth in prior complaints and their respective attachments).").

denial of medical care before commencing this action.  Rather, Plaintiff admitted in both pleadings that his administrative claim was still "pending."  Indeed, Plaintiff did not exhaust grievance #A-76366-19 until June 4, 2020.[18]  To the extent Plaintiff now insists that grievance #A-76366-19 was exhausted prior to his commencement of this action, his assertion is contradicted by his own pleadings and unsupported by the other documents to which he has cited.

Of course, Plaintiff eventually exhausted his administrative remedies as to the claims for excessive force and denial of medical care, prior to the Court ruling on Defendants' motion.  However, such fact does not save those claims from dismissal: "Since Plaintiff failed to exhaust his administrative remedies prior to commencing suit, his subsequent exhaustion does not save this case from dismissal." *Conklin v. Bowen*, No. 9:12-CV-01478 MAD, 2014 WL 4063294, at *4 (N.D.N.Y. Aug. 14, 2014) (footnote omitted).

Accordingly, the claims for excessive force and denial of medical care must be dismissed, while the sexual abuse claim may proceed.  Nevertheless, Plaintiff's failure to exhaust the claims for excessive force and denial of medical treatment before commencing this action is a "temporary procedural flaw" that may easily be cured by amendment, now that Plaintiff has exhausted those claims:

> Plaintiff's failure to exhaust his administrative remedies before filing the Complaint "is merely a temporary procedural flaw," *Wagnoon v. Johnson*,

---

[18] In that regard, the exhaustion of Plaintiff's sexual assault claim does not amount to exhaustion of his other claims. *See, e.g., Fox v. Lee*, No. 915CV0390TJMCFH, 2018 WL 8576600, at *10 (N.D.N.Y. Dec. 18, 2018) ("Because excessive force is a separate cause of action, plaintiff's claim is not deemed exhausted through the filing of his PREA complaint. *See Allen v. Graham*, No. 9:16-CV-47 (GTS/ATB), 2017 WL 9511168, at *7 (N.D.N.Y. Sept. 26, 2017) ("Because DOCCS created this exception solely for sexual abuse and sexual harassment claims, plaintiff's complaint to mental health staff would not exhaust other claims arising from the July 30, 2014 incident, such as an Eighth Amendment excessive force claim."); *see also supra*, at 23-24."), report and recommendation adopted, No. 915CV0390TJMCFH, 2019 WL 1323845 (N.D.N.Y. Mar. 25, 2019).

No. 02-CV-10282, 2004 WL 583764, at *3 (S.D.N.Y. Mar. 23, 2004) (dismissing the plaintiff's case without prejudice so that he could reinstitute suit), and even were the Court to dismiss Plaintiff's Complaint on this ground, such dismissal would be without prejudice, *see Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (noting that where a plaintiff has failed to exhaust administrative remedies, dismissal without prejudice is proper because the plaintiff can simply replead after he exhausts); *McCoy*, 255 F.Supp.2d at 252 ("A dismissal for failure to exhaust is usually without prejudice ... because failure to exhaust is ordinarily a 'temporary, curable, procedural flaw.' " (quoting *Snider v. Melindez*, 199 F.3d 108, 111 (2d Cir. 1999))). Plaintiff would only need to file an Amended Complaint to reinstitute th[ose claims].

*Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017).

Additionally, it is evident from Plaintiff's submissions, liberally construed, that he wishes to pursue the now-exhausted claims, even though he has not expressly articulated a desire to move for amendment should the Court grant Defendants' motion. Consequently, on the particular facts of this case, the Court finds that it would be pointless to require Plaintiff, who already files far too much paper with the Court, to file a formal motion to amend his pleading to "add" the now-exhausted claims to this action. Instead, the Court liberally construes Plaintiff's submissions to date as making an alternative request to amend, and grants that request with regard to the claims for excessive force and denial of medical care. In that regard, Defendants have not identified any additional pleading defects in the Amended Complaint, and the Court has already screened the claims and permitted them to proceed. Accordingly, the Court grants Defendants' motion to dismiss as to the claims for excessive force and denial of medical care, and also grants Plaintiff's alternative request to amend his pleading to re-assert the now exhausted claims. The Amended Complaint will remain the operative pleading, and Plaintiff may

proceed on his claims for sexual assault, excessive force and denial of medical care. [19]

<u>Plaintiff's Requests to Add Noeth, Mezydlo and Munez as Defendants</u>

As discussed earlier, the Court indicated as part of its order screening the Amended Complaint that the pleading would be deemed amended to include the actual names of the John Doe defendants, once they were identified. *See*, ECF No. 11 at pp. 4-5 ("Once this information is provided, Plaintiff's Amended Complaint shall be deemed amended to reflect the full names of the John Doe Defendants, a summons shall issue and the Defendants shall be served.").  Purportedly in reliance on that direction, Plaintiff has subsequently asked that Noeth, Mezydlo and Munez be added as defendants. However, Mezydlo is the only one of the three who actually falls under the Court's Order concerning the addition of John Doe defendants.  In that regard, Defendants' *Valentin* response indicated that Mezydlo was present during the cell extraction, though he reportedly was not directly involved in the use of force.  Accordingly, the Court grants Plaintiff's request to add Mezydlo as a defendant.

Plaintiff's request is denied, however, as to Noeth.  In that regard, the Court expressly dismissed Noeth from the action based on Plaintiff's failure to plead his personal involvement in the alleged constitutional violations.  Plaintiff now asks the Court to bring Noeth back into the action, evidently because preliminary disclosures provided by Defendants indicate that Noeth was involved in the events of October 8, 2019, at Attica, insofar as he gave his approval beforehand to the cell extraction and the use of chemical agents, after being advised that Plaintiff had barricaded himself in his cell and spurned

---

[19] Defendants are not prejudiced by this result, as they were on notice when they filed their motion that Plaintiff had already exhausted grievance #A-76366-19, and that his failure to exhaust that grievance prior to commencing the action was therefore an easily-fixed procedural flaw.

numerous attempts to convince him to come out peacefully.  However, the use of pepper spray and cell extraction procedures in such a situation is not inherently unconstitutional, and Plaintiff has offered nothing indicating that Noeth authorized or participated in the alleged use of excessive force, sexual assault or denial of medical care.  Accordingly, Plaintiff's request to add Noeth as a defendant is denied.  Finally, Plaintiff's request to add Munez as a defendant is similarly denied, as it is completely unexplained and unsupported by the documentation to which Plaintiff has referred.  Indeed, the Court has no idea who Munez is or how he supposedly was involved in the alleged constitutional violations.

In sum, Plaintiff's request to add defendants is granted as to Mezydlos and denied as to Noeth and Munez.

CONCLUSION

For the reasons discussed above Plaintiff's Motion for Summary Judgment (ECF No. 40) is denied; Defendants' Motion to Dismiss (ECF No. 37) is denied as to the claim for sexual assault and granted as to the claims for excessive force and denial of medical treatment, without prejudice; Plaintiff's implied request to amend the Amended Complaint to re-assert the now-exhausted claims for excessive force and denial of medical care is granted; Plaintiff's request to add Mezydlo as a defendant (ECF No. 58) is granted; Plaintiff's request to add Noeth as a defendant (ECF No. 57) is denied; and Plaintiff's letter-request to add Munez as a defendant (ECF No. 48) is denied.  The Amended Complaint (ECF No. 9) shall remain the operative complaint and Mezydlo will be deemed added to the pleading in place of a John Doe defendant.  Consistent with the Court's prior Order (ECF No. 7), the Clerk of the Court is directed to add C.O. D. Mezydlo as a

defendant, issue a summons for him, and arrange for service of the summons and Amended Complaint upon him by the U.S. Marshal.  By separate order the Court will refer this matter to a United States Magistrate Judge for all discovery and non-dispositive pretrial matters.

      SO ORDERED.

Dated: Rochester, New York
     October  24, 2022

                ENTER:

                CHARLES J. SIRAGUSA
                United States District Judge