UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MIGUEL DIAZ,

Plaintiff,

v.

BRANDON ROBERTS, SGT. A. SNYDER, NURSE L. BUSCH, LT. S. SKAWENSKI, BARBARA LAHRS, MATTHEW R. RATAJCZAK, JOSHUA BERRY, ROBERT KOEPF, TIMOTHY FOSTER, C.O. D. MEZYDLO,

Defendants.

19-CV-6872-CJS-MJP

DECISION and ORDER

## INTRODUCTION

*Pro se* plaintiff Miguel Diaz commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that the defendants violated his federal constitutional rights while he was confined at Attica Correctional Facility ("Attica").[1] Now before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, ECF No. 153, and Plaintiff's cross-motion for summary judgment, ECF No. 156. For the reasons discussed below, Defendants' motion is granted, Plaintiff's cross-motion is denied, and the action is dismissed.

## PROCEDURAL BACKGROUND

Plaintiff's Amended Complaint (ECF No. 70), the operative pleading, alleges that the defendants, all of whom were employed at Attica on October 8, 2019, violated

[1] Since Plaintiff is proceeding *pro se* the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff's Eighth Amendment rights while extracting him from his cell, by subjecting him to excessive force, failing to intervene to prevent the excessive force, and acting with deliberate indifference to his serious medical needs. The pleading contends that Physician's Assistant Barbara Lahrs, PA ("Lahrs") improperly gave medical authorization for the cell extraction. The pleading further asserts that during the cell extraction, after Plaintiff was handcuffed inside his cell, defendant corrections officers, Brandon Roberts ("Roberts"), Joshua Berry ("Berry"), Robert Koepf ("Koepf"), Timothy Foster ("Foster"), D. Mezydlo ("Mezydlo"), and Matthew Ratajczak ("Ratajczak") "beat" Plaintiff, and one of them "put either a finger or walkie talkie antenna" in Plaintiff's "anal cavity," which caused Plaintiff "immediate paralysis." The pleading states that while these things were occurring, Sergeant A. Snyder ("Snyder") and Lieutenant S. Skawienski ("Skawienski") stood by and failed to intervene. The Complaint alleges that after the cell extraction, Nurse L. Busch, R.N. ("Busch") refused to examine him and ignored his injuries. The pleading states that immediately after the cell extraction Plaintiff was transported to Auburn Correctional Facility ("Auburn"), where doctors "determined [Plaintiff] had paralysis" and blood in his stool.[2]

After the completion of pretrial discovery, Defendants filed the subject motion for summary judgment, ECF No. 153. Defendants' motion is supported by a declaration from Defendants' counsel, John Marsella ("Marsella"); sworn affidavits from defendants Skawienski, Snyder, Berry, Roberts, Koepf, Foster, Ratajczak, and Mezydlo, each of whom denies that he used excessive force on or sexually assaulted Plaintiff during the

[2] Attached to the Amended Complaint is a grievance in which Plaintiff asserted that he was "paralyzed" for twelve hours following the cell extraction. ECF No. 70 at p. 21.

cell extraction, or saw any other member of the Attica staff do so; a sworn affidavit from Nurse Practitioner Lahrs, who indicates that prior to the cell extraction, she reviewed Plaintiff's medical chart and reported to corrections staff that Plaintiff had no medical contraindication for the use of chemical agents during the cell extraction; and a sworn affidavit from Nurse Busch, a civilian employee of Attica, indicating that she examined Plaintiff after the cell extraction and observed that he was able to walk and had no visible injuries. Significantly, the motion is also supported by a handheld video recording of the entire incident, spanning the period before the officers entered Plaintiff's cell until he was placed in a van for transport to Auburn. All events relating to Plaintiff's claims are documented on the video, except the actions of Lahrs, which took place prior to the cell extraction.

Also attached to Defendants' motion is a statement of facts, *i.e.*, "Movant's Statement" (ECF No. 153-3), as required by Rule 56(a)(1) of the Local Rules of Civil Procedure, which rule states in pertinent part:

> **Movant's Statement**. Upon any motion for summary judgment pursuant to Fed. R. Civ. P. 56, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Each such statement must be followed by citation to admissible evidence or to evidence that can be presented in admissible form at trial as required by Fed. R. Civ. P. 56(c)(1)(A). Citations shall identify with specificity the relevant page and paragraph or line number of the evidence cited. Failure to submit a statement in compliance with this Rule may constitute grounds for denial of the motion.

Local R. Civ. P. 56(a).

Defendants' "Movant's Statement," consisting of 68 separately-numbered paragraphs, each containing a citation to the evidence upon which it relies, states:

1. On October 8, 2019, Plaintiff, Miguel Diaz (DIN: 18-A-2702) was incarcerated at the Attica Correctional Facility of the New York State Department of Correction and Community Supervision ("DOCCS"). ECF 68.

2. In the months leading up to October 8, 2019, Plaintiff was found guilty of violating prison disciplinary rules multiple times at Attica Correctional Facility. Declaration of John Marsella ("Marsella Dec.") ¶ 5, Ex. C.

3. On August 13, 2019, Plaintiff was found guilty of making threats and harassment in violation of prison disciplinary rules. Marsella Dec. ¶ 5, Ex. C.

4. On August 26, 2019, Plaintiff was found guilty of making threats in violation of prison disciplinary rules. Marsella Dec. ¶ 5, Ex. C.

5. On September 11, 2019, Plaintiff was found guilty of soliciting, smuggling, facilitating correspondence, and providing false information in violation of prison disciplinary rules. Marsella Dec. ¶ 5, Ex. C.

6. On October 8, 2019, Plaintiff refused to exit his cell for a scheduled Court ordered draft. Declaration of Stephen Skawienski ("Skawienski Dec.")1 ¶ 9.

7. Multiple attempts were made to persuade Plaintiff to exit his cell and comply with DOCCS staff instructions, but Plaintiff refused to comply with instructions. Skawienski Dec. ¶ 9; Snyder Dec. ¶ 7.

8. Superintendent Noeth authorized the use of force to remove Plaintiff from his cell. Skawienski Dec. ¶ 9; Snyder Dec. ¶ 8.

9. Barbara Lahrs is a Nurse Practitioner with twenty-eight years of experience, who was working on October 8, 2019, at DOCCS Attica Facility. Lahrs Dec. ¶¶ 2-6.

10. At approximately 9:00 a.m. in the morning Ms. Lahrs was alerted that there was a request to use force, including the use of chemical agents, on Plaintiff, and she was asked to review his medical background to determine whether there were any contraindications for use of a chemical agent on Plaintiff. Lahrs Dec. ¶¶ 5-10.

11. Ms. Lahrs reviewed Plaintiff's medical history and did not identify any

contraindications for use of chemical agents. A "contraindication" of a chemical agent is a conditions or circumstances that would indicate that chemical agents should not be used on an individual because doing so would be unsafe or cause potential damage to that individual. She then informed her DOCCS colleagues that she did not identify any contraindications and entered a note in his medical chart indicating, "no contraindication for use of chemical agents identified." Lahrs Dec. ¶¶ 6-10.

12. Ms. Lahrs did not participate in any cell extraction, the deployment of a chemical agent, or any use of force; she was not present and did not observe any deployment of a chemical agent, cell extraction, use of force, or search of Plaintiff on October 8, 2019. Lahrs Dec. ¶¶ 11-12.

13. Superintendent Noeth authorized the use of chemical agents to extract Plaintiff and ordered that an extraction team was assembled to extract Plaintiff from his cell. Skawienski Dec. ¶ 9.

14. On or around 10:30 a.m. an extraction team was assembled to extract Plaintiff from his cell if necessary. Mezydlo Dec. ¶ 7.

15. The DOCCS employees present at the cell extraction consisted of supervisor Lt. Stephen Skawienski, (Skawienski Dec. ¶¶ 13-46); supervisor Sgt. Andrew Snyder, (Snyder Dec. ¶¶ 10-40); camera recorder C.O. Joshua Berry (Berry Dec. ¶¶ 5-24); and extraction team members: first in C.O. Roberts, (Roberts Dec. ¶¶ 5-22); second in C.O. Ratajczak (Ratajczak Dec. ¶ 13); third in C.O. Koepf (Koepf Dec. ¶ 14); fourth in C.O. Foster (Foster Dec. ¶ 16); and last in the cell C.O. Mezydlo (Mezydlo Dec. ¶ 13).

16. Lt. Skawienski's role at the extraction was to serve as a supervisor, supervising the extraction team and maintaining the safety and security of the facility, Sgt. Snyder's role was to administer aerosol [chemical agent] and supervise the extraction team to ensure everything was done safely and in accordance with DOCCS policies and procedures. Skawienski Dec. ¶ 7; Snyder Dec. ¶ 12.

17. The only Corrections Officers who entered Plaintiff's cell were[,] first in C.O. Roberts, (Roberts Dec. ¶¶ 5-22); second in C.O. Ratajczak (Ratajczak Dec. ¶ 13); third in C.O. Koepf (Koepf Dec. ¶ 14); fourth in C.O. Foster (Foster Dec. ¶ 16); and last in the cell C.O. Mezydlo (Mezydlo Dec. ¶ 13).

18. While in the lobby of the area Plaintiff was housed, C.O. Berry began recording the extraction team. Berry Dec. ¶ 8-11; Marsella Dec. ¶ 4. Ex. B, Video 00006 at 00.00.

19. Once the extraction team was assembled the team moved to Plaintiff's cell at OB7 where the inmate was housed. Snyder Dec. ¶ 10; Foster Dec. ¶ 7; Marsella Dec. ¶ 4. Ex. B, Video 00006 from 1:30 – 1:49.

20. When the extraction team reached Plaintiff's cell, Lt. Skawienski issued a final direct order for the Plaintiff to come out of his cell. Skawienski Dec. ¶ 16; Snyder Dec. ¶ 14-16; Marsella Dec. ¶ 4. Ex. B, Video 00006 at 1:49.

21. When the extraction team approached Plaintiff's cell, he yelled "where's my gas mask." Marsella Dec. ¶ 4. Ex. B, Video 00006 at 1:49.

22. Lt. Skawienski stated, "Diaz, Diaz, this is your final direct order, are you going to cuff up and come out?" Marsella Dec. ¶ 4. Ex. B, Video 00006 at 1:55.

23. Plaintiff responded by laughing and Lt. Skawienski issued the order, "remove Diaz from his cell." Marsella Dec. ¶ Ex. 4, B, Video 00006 at 2:05.

24. At the time Lt. Skawienski issued the order to remove Plaintiff from his cell, a state issued mattress was blocking the hatch of the cell. *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 2:07; Snyder Dec. ¶ 17.

25. Plaintiff failed to comply with direct orders of DOCCS staff, which poses a significant security and safety risk to the Plaintiff, facility staff, and other incarcerated individuals and needs to be dealt with quickly and efficiently. Snyder Dec. ¶ 11; Skawienski Dec. ¶ 14.

26. Due to the mattress blocking the hatch of the cell, Sgt. Snyder administered a chemical agent, CS aerosol into the rear of the cell. Snyder Dec. ¶ 17. He did so using two, one second bursts into the cell. Snyder Dec. ¶ 18.

27. Following the first application of aerosol, Plaintiff was once against asked to exit the cell and instructed, "Diaz cuff up. Put the mattress down and cuff up."[3] *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 3:10.

28. Sgt. Snyder's first application of aerosol did not have the desired effects [as Plaintiff] continued [not] to agree to put his hands in the hatch to be cuffed or peacefully exit his cell. Snyder Dec. ¶¶ 19-20.

29. Sgt. Snyder administered aerosol a total of four times, each application consisting of two one-second bursts. *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 3:55; Snyder Dec. ¶ 21.

30. When Sgt. Snyder began the second administration of aerosol, Plaintiff stated, "Aw[,] man, here we go." *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 3:55.

31. Time passed between each administration of aerosol. *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 3:55; Snyder Dec. ¶ 21.

32. Following another administration of aerosol Plaintiff was instructed, "Diaz come to the hatch and cuff up." See Marsella Dec. ¶ 4, Ex. B, Video 00006 at 4:28.

33. Plaintiff responded, "I'm not going." See Marsella Dec. ¶ 4, Ex. B, Video 00006 at 4:39.

34. After refusing additional instructions to come to the hatch and cuff, Plaintiff Diaz sa[id], "Alright send em in." *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 4:42.

35. Sgt. Snyder administered aerosol again. *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 5:08; Snyder Dec. ¶ 21.

36. Plaintiff responded by saying, "Keep this it up, it's not going to work." *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 5:10.

---

[3] The Court understands the references to "cuffing up" to mean that the officers were asking Plaintiff to place his hands behind him, at the cell hatch, so that he could be handcuffed through the cell hatch.

37. The administrations of aerosol did not have the desired effect, Plaintiff did not comply with orders following the use of the chemical agent, and Lt. Skawienski ordered Sgt. Snyder to employ the extraction team to remove the Plaintiff from his cell. *See* Snyder Dec. ¶¶ 18-25; Skawienski Dec. ¶¶ 18-26.

38. C.O. Mezydlo unlocked and then opened Plaintiff's cell door. *See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 5:46; Mezydlo Dec. ¶¶ 14-15.

39. C.O. Roberts entered Plaintiff's cell and utilized a cell shield to pin Plaintiff to the floor. Roberts Dec. ¶ 10.

40. Immediately after pinning Plaintiff to the floor, C.O. Roberts moved the cell shield aside and took control of Plaintiff's thighs using both of his hands. Roberts Dec. ¶ 10.

41. C.O. Ratajzcak entered Plaintiff's cell second, behind C.O. Roberts, and placed his right knee on Plaintiff's upper back while using both hands to gain control of Plaintiff's left arm and place it behind his back. Ratajzcak Dec. ¶ 13.

42. As soon as it was safe to do so, C.O. Ratajzcak removed his knee from Plaintiff's back. Ratajzcak Dec. ¶ 14.

43. C.O. Koepf entered Plaintiff's cell third, behind C.O. Roberts and Ratajzcak, and applied mechanical restraints to Plaintiff's left wrist, which was controlled by C.O. Ratajczak; then C.O. Koepf forced Plaintiff's right arm behind his back and mechanically restrained his right arm. Koepf Dec. ¶¶ 14-15.

44. C.O. Foster entered Plaintiff's cell fourth, behind C.O. Roberts, Ratajczak, and Koepf, and immediately went to the lower part of Plaintiff's legs to gain control while mechanical restraints were being applied. Foster Dec. ¶ 17.

45. C.O. Mezydlo entered Plaintiff's cell fifth and removed the cell shield from the cell. He did not place his hands on Plaintiff. Mezydlo Dec. ¶ 15; Marsella Dec. ¶ 4, Ex. B, Video 00006 at 5:57.

46. Once Plaintiff was mechanically restrained and Plaintiff was able to be safely lifted and removed from his cell C.O. Roberts released his hold on Plaintiff. Roberts Dec. ¶ 11.

47. Approximately twenty-seconds after corrections officers entered Plaintiff's cell, he was instructed to "stop resisting" and can be heard saying, "I'm not resisting." Marsella Dec. ¶ 4, Ex. B, Video 00006 at 6:09.

48. Just seconds later the corrections officers begin to move away from Plaintiff's side and assist him in standing up and exiting the cell. Marsella Dec. ¶ 4, Ex. B, Video 00006 at 6:16.

49. With mechanical restraints on Plaintiff, C.O. Koepf took control of Plaintiff's left arm with both hands and C.O. Ratajczak took control of Plaintiff's right arm, and escorted him to the shower for decontamination. Koepf Def. ¶¶ 16; Marsella Dec. ¶ 4, Ex. B, Video 00006 at 6:30.

50. It took the extraction team approximately forty seconds to enter Plaintiff's cell, safely secure him into mechanical restraints, and remove him from his cell. Marsella Dec. ¶ 4, Ex. B, Video 00006 at 5:49 – 6:30.

51. Lt. Skawienski, Sgt. Snyder, C.O. Berry, Barbara Lahrs, and Lynne Busch, did not enter Plaintiff's cell or physically extract him from his cell. *See* Busch Dec. ¶ 17; Lahrs Dec. ¶ 11; Berry Dec. ¶ 13; Snyder Dec. ¶ 39; Skawienski Dec. ¶ 44; Marsella Dec. ¶ 4, Ex. B, Video 00006 at 5:49 – 6:30.

52. During the cell extraction, Plaintiff [wa]s wearing a tear proof green smock and his buttocks and backside were covered. Marsella Dec. ¶ 4, Ex. B, Video 00006 at 6:30; Roberts Dec. ¶ 13.

53. Following Plaintiff's extraction from his cell he was brought to a shower to be decontaminated. Marsella Dec. ¶ 4, Ex. B, Video 00006 at 6:30 – 7:30.

54. Following Plaintiff's decontamination he was brought to the lobby for a strip frisk to be performed. Plaintiff was placed on a clean floor covering mat so the extraction team could perform a frisk and assist Plaintiff in changing into his court clothing. During the frisk, C.O. Foster used a single use latex glove to spread Plaintiff's buttocks with both hands for a visual inspection of his anal cavity to ensure there was no contraband concealed. C.O. Foster's inspection of Plaintiff's anal cavity took approximately one second.

*See* Marsella Dec. ¶ 4, Ex. B, Video 00006 at 21:00 – 21:40; Foster Dec. ¶ 21-23.

55. The strip frisk of Plaintiff was authorized by Superintendent Noeth. Snyder Dec. ¶31.

56. While Plaintiff was in the lobby area he was seen by medical, who reported no injuries. Snyder Dec. ¶ 29.

57. Around 10:35 a.m., while Plaintiff was in the lobby, Lynne Busch, a civilian Registered Nurse, employed by Pinnacle Travel Staffing, a nurse placement agency assigned at Attica Correctional was informed that she needed to see Plaintiff following a use of force incident. Busch Dec. ¶¶ 4-8.

58. R.N. Lynne Busch, saw Plaintiff and assessed him for potential injuries. While assessing Plaintiff R.N. Busch observed that he was able to move both legs and was able to take steps. R.N. Busch observed that, although he refused to stand, he ambulated at times through the MHU lobby with a steady gait. Busch Dec. ¶¶ 9-10.

59. R.N. Lynne Busch also observed that the Plaintiff was able to verbalize, had good skin coloration during the assessment period, and that his respiratory capillary refill was brisk. Busch Dec. ¶¶ 11-12.

60. R.N. Lynne Busch did not observe any injuries on Plaintiff and cleared him [for] the draft. Busch Dec. ¶¶ 13-14.

61. Following the medical examination, Plaintiff was cleared to the draft. Snyder Dec. ¶ 32.

62. He was then dressed and escorted to draft for transportation. Snyder Dec. ¶ 32; Foster Dec. ¶ 21-23; Marsella Dec. ¶ 4, Ex. B, Video 00006 at 22:00 – 27:00.

63. R.N. Lynne Busch, who has twenty-eight years of experience as a Registered Nurse and was working as a civilian traveling nurse for Pinnacle Travel Staffing on October 8, 2019, observed Plaintiff step from the wheelchair and move towards the draft vehicle without incident. Busch Dec. ¶¶ 2-6, 16.

> 64. R.N. Busch did not participate in any cell extraction, the deployment of a chemical agent and she was not present and did not observe any deployment of a chemical agent, or cell extraction of Plaintiff on October 8, 2019. Busch Dec. ¶ 17.
>
> 65. Ultimately, Plaintiff moved from the draft area to a transport vehicle. Marsella Dec. ¶ 4, Ex. B, Video 00007 at 06:10 – 7:02.
>
> 66. Defendants Roberts, Mezydlo, Ratajczak, Foster, and Koepf, who entered Plaintiff's cell, used the minimal force necessary to gain Plaintiff's compliance and safely extract him. Roberts Dec. ¶ 12; Mezydlo Dec. ¶ 25; Ratajczak ¶¶ 13 – 20; Foster Dec. ¶ 24; Koepf Dec. ¶ 21.
>
> 67. All force used during the incident was the minimal amount of force needed to maintain the safety of the Plaintiff, facility personnel, other incarcerated individuals, and the facility at large. Snyder Dec. ¶ 37; Skawienski Dec. ¶ 42.
>
> 68. None of the Defendants in this action observed any constitutional violations being committed. Snyder Dec. ¶ 38; Skawienski Dec. ¶ 43; Ratajczak Dec. ¶ 21; Berry Dec. ¶ 21;Mezydlo Dec. ¶ 22; Foster Dec. ¶ 30; Roberts Dec. ¶ 20; Koepf Dec. ¶ 21; Busch Dec. ¶ 19; Lahrs Dec. ¶ 12.

ECF No. 153-3 at pp. 1-10.

Defendants also filed and served a Memorandum of Law (ECF No. 153-1) contending that Plaintiff cannot demonstrate that any defendant subjected him to excessive force, failed to intervene to prevent a constitutional violation, or was deliberately indifferent to his serious medical needs. Rather, the Memorandum of Law indicates that Plaintiff's contrary version of events is inherently incredible since it is refuted by the video footage of the cell extraction that was submitted along with Defendants' motion. Alternatively, the Memorandum of Law contends that defendants are entitled to qualified immunity.

Along with the motion Defendants also filed and served a "Notice to *Pro Se* Litigants" as required Local Rule 56(b). (ECF No. 153-2). The court-approved form notice states in pertinent part:

> **Failure to respond to this motion for summary judgment may result in the grant of judgment in favor of the party seeking summary judgment and the dismissal of all or part of the case. You may NOT oppose summary judgment simply by relying on allegations or documents previously filed in this case.**
>
> **Opposing Affidavits and Exhibits**
>
> If the motion seeks summary judgment against you, you **MUST** submit opposing papers in the form of one or more affidavits (or affirmations) made upon the personal knowledge of the person signing each affidavit. Each affidavit must set forth admissible facts and must show that the person submitting that affidavit is competent to testify as to the matters stated therein (because he or she has personal knowledge of the facts set forth in the affidavit). If you wish to submit exhibits in opposition to the motion, you may attach to the affidavit (or submit separately) sworn or certified copies or all papers or parts thereof which are referred to in an affidavit.
>
> **Statement of Material Facts Requiring a Trial**
>
> You **MUST** submit a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs. You may also submit a short and concise statement of any additional material facts as to which you contend there exists a genuine issue for trial, if necessary. Each statement in your response or statement of additional material facts must be followed by citation to admissible evidence or to evidence that can be presented in admissible form at trial. See Rule 56 of the Local Rules of Civil Procedure (available on the Western District web site at www.nywd.uscourts.gov). Note that all of the material facts that have been set forth in the statement served on you by the moving party may be deemed to have been admitted by you unless specifically controverted by a correspondingly numbered paragraph in your opposing statement of material facts.
>
> **Memorandum of Law**
>
> You **MUST** also submit a separate answering memorandum of law, Loc. R. Civ. P. 7(a)(2)(A), which may not exceed 25 pages in length without prior approval of the Court, Loc. R. Civ. P. 7(a)(2)(C). Failure to comply with this requirement may result in the motion being decided against the non-complying party.

ECF No. 153-2 at p. 3 (emphasis in original).

Plaintiff filed a response to Defendants' motion, ECF No. 155. However, Plaintiff's response does not include an opposing statement of facts or "Opposing Statement" as directed by the "Notice to *Pro Se* Litigants" and as required by Rule 56(a)(2) of the Local Rules of Civil Procedure, which rule states in pertinent part:

> **Opposing Statement**. A party opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs. Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by correspondingly numbered paragraphs in such opposing statement with citation to admissible evidence or to evidence that can be presented in admissible form at trial as required by Fed. R. Civ. P. 56(c)(1)(A). In addition, when appropriate, the opposing party's statement may also contain a short and concise statement, in numbered paragraphs, of additional material facts (i) as to which the opposing party contends there is no genuine issue to be tried; and/or (ii) that the opposing party contends are in dispute.

Local R. Civ. P. 56(a)(2). Nor did Plaintiff file or serve an affidavit or memorandum of law, contrary to the warnings contained in the Local Rule 56(b) "Notice to *Pro Se* Litigants."

Instead, Plaintiff's response to Defendants' summary judgment motion (ECF No. 155) consists of an unsworn 2-page document stating:

> [1.] NOTICE OF AFFIDAVIT[4] OF FACTS & OPPOSITION TO THE DEFENDANTS' 6/18/24 FILED NOTICE FOR SUMMARY JUDGMENT. "ALL" OF STATEMENTS MADE IN THE DEFENDANTS' MOTION ARE UNTRUE, BASELESS, MERITLESS, & THE EVIDENCE THAT THEY CLAIM SUPPORTS THEIR ARGUMENTS (THE VIDEO) SHOWS THE OPPOSITE, & NOW BY LAW SINCE BOTH PARTIES CAN'T AGREE ON

[4] Again, contrary to what Plaintiff states here, he did not file an affidavit.

A SETTLEMENT, THIS CASE NEEDS TO BE PUT IN FRON OF A JURY FOR ITS FINAL CONCLUSION PLEASE.

[2.] "(THE VIDEO)" ACTUALLY SHOWS THAT THE PLAINTIFF WAS ASSAULTED, NOT PROPERLY MEDICALLY EXAMINED, NOT CLEARED BY MENTAL HEALTH TO LEAVE WHICH IS REQUIRED, AND WAS SO HURT THAT I HAD TO BE PUT IN A WHEELCHAIR.

[3.] (MEDICAL RECORDS) PROVIDED IN THIS CASE SHOWS THAT DUE TO DEFENDANTS' ACTIONS TO THE PLAINTIFF IT CAUSED BLOOD TO BE IN HIS STOOL & FOR THE PLAINTIFF TO BE PARALYZED FOR ALMOST 12 HOURS, & ALL THESE ARE UNDISPUTED, PROVIDED IN THIS CASE (MEDICAL DOCUMENTS) FROM PROFESSIONALS.

SO WITH THIS AFFIDAVIT OF FACTS, & CASE EVIDENCE TO SUPPORT THE PLAINTIFF'S ARGUMENT THE PLAINTIFF RESPECTULLY REQUESTS THAT THE DEFENDANTS' MOTION BE DENIED & THAT THIS CASE NOW BE PUT BEFORE A JURY TO DECIDE.

THANKS A LOT.

RESPECTFULLY SUBMITTED BY MIGUEL DIAZ, PLAINTIFF.

ECF No. 155 (capitalization in original).[5]

Shortly after filing his response (ECF No. 155), Plaintiff filed a document captioned as a "Counter Motion for Summary Judgment" (ECF No. 156). However, the purported counter-motion is not supported by a "Movant's Statement" as required by Local R. Civ. P. 56(a), as set forth earlier, or by any affidavit or memorandum of law. Instead, Plaintiff's entire submission consists of an unsworn 2-page statement, stating:

COUNTER MOTION FOR SUMMARY JUDGMENT 19-CV-6872

[5] Inexplicably attached to this statement by Plaintiff are copies of Defendant's certificate of service, the Local Rule 56(b) Notice, and the first page of Defendant's Statement of Facts.

PLEASE TAKE NOTICE: THAT THE PLAINTIFF HAS ALREADY FILED A AFFIDAVIT[6] OF FACTS OPPOSING THE DEFENDANTS' SUMMARY MOTION & NOW DUE TO ALL THE BELOW FACTS IS NOW FILING ONE OF HIS OWN.

[1.] (THE VIDEO) CLEARLY SHOWS THAT ALL THE DEFENDANTS ASSAULTED ME & THAT NURSE BUSCH DID NOT DO A PROPER MEDICAL EVAL TO ASSESS MY INJURIES.

[2.] THAT IN ORDER TO LEAVE ANY "MENTAL HEALTH SETTING" (BY LAW) A PSYCHOLOGIST MUST APPROVE IT FIRST, & THE DEFENDANTS CAN'T PRODUCE OR HAVE EVER PRODUCED A PSYCHOLOGIST DOCUMENTE APPROVING MY RELEASE FROM THE MENTAL HEALTH (OBS) SETTING MAKING THE ENTIRE CELL EXTRACTION THAT TOOK PLACE (ILLEGAL).

[3.] THE MEDICAL DOCUMENTS THAT THE PLAINTIFF HAS ALREADY PROVIDED IN THIS CASE PROVES THAT DUE TO ALL THE DEFENDANTS' ACTIONSTHE PLAINTIFF HAD BLOOD IN HIS STOOL & WAS PARALYZED, & THIS WAS ALL WRITTEN BY NON-BIAS (DOCCS) EMPLYEES THE "DEFENDANTS' CO-EDS" SO YOU KNOW IT'S TRUE! PLEASE SEE: ALL MEDICAL DOCUMENTS PRIORLY PROVIDED.

SO FOR THE ABOVE UNDISPUTED FACTS WITH SUPPORTING DOCUMENTS & VIDEO EVIDENCE TO GO WITH IT, THE PLAINTIFF ASKS THAT THIS COURT GRANT THIS MOTION & MAKE EACH DEFENDANT PAY ONE MILLION DOLLARS TO THE PLAINTIFF ALONG WITH ALL ELSE IT DEEMS JUST & PROPER.

THANKS A LOT.

RESPECTFULLY SUBMITTED BY MIGUEL DIAZ.

ECF No. 156 (capitalizations in original).

Defendants subsequently filed a Reply, ECF No. 157.

[6] Again, contrary to Plaintiff's references to an affidavit he did not file an affidavit or any sworn statement in connection with the pending motions.

FACTUAL BACKGROUND

As just discussed, Plaintiff's submissions in response to Defendants' summary judgment, as well as his purported cross-motion for summary judgment, fail to comply with Local Rule 56 in just about every significant respect.

> Although Plaintiff, as a *pro se* litigant, should be "granted special leniency regarding procedural matters," *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F. 3d 206, 209 (2d Cir. 2001), he must nevertheless comply with the Local Rules, *see* Loc. R. Civ. P. 5.2(i) ("All *pro se* litigants shall become familiar with, follow, and comply with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure").

*Ward v. Rodriguez*, No. 22-CV-6497-FPG, 2025 WL 254493, at *2 (W.D.N.Y. Jan. 21, 2025).

Plaintiff's failure to follow the local rules, and particularly Rule 56(a)(2), therefore presents "a threshold procedural issue" concerning which facts the Court should rely upon in resolving the pending motions. *Knight v. New York State Dep't of Corr. & Cmty. Supervision*, No. 6:21-CV-6633 EAW, 2026 WL 2581618, at *1 (W.D.N.Y. Sept. 1, 2026) ("*Knight*") (observing that a *pro se* plaintiff's failure to follow Local Rule 56 created a "threshold procedural issue.") (Wolford, C.J.). As the district court in *Knight* observed,

> Where, as here, a party violates a district court's local rules, the Court has discretion to deem facts admitted. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005). But a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record. *Id*. at 649. Accordingly, the Court [should] accept[ ] as true the facts set forth in Defendant's Statement of Material Facts "to the extent they are supported by admissible evidence in the record and are not directly controverted by the facts and exhibits in the record." *Popat v. Levy*, No. 15-CV-01052 EAW, 2024 WL 3652947, at *2 (W.D.N.Y. Aug. 5, 2024).

*Id*. at *2.

Accordingly, in the instant case where Plaintiff has clearly violated Local R. Civ. P. 56(a)(1)&(2), and has also failed to submit a sworn affidavit in opposition to Defendants' motion or in support of his cross-motion, the Court accepts as true the facts contained in Defendants' "Movants' Statement" to the extent they are supported by admissible evidence in the record and are not directly controverted by the facts and exhibits in the record, including the video footage of the cell extraction, submitted in support of Defendants' motion, which both sides have urged the Court to consider.

Plaintiff maintains that Defendants' statement of facts is controverted by two things: The video of the cell extraction, which he contends shows defendants committing the alleged constitutional violations, and his medical records, which he contends show that he was paralyzed and had blood in his stool following the cell extraction.[7] However, the Court disagrees.

To begin with, Plaintiff does not point out any specific way in which the video supposedly contradicts Defendants' affidavits. Rather, he just baldly asserts that the video does so. Nor does Plaintiff identify any particular medical record that contradicts Defendants' papers, but, rather, he merely asserts that his medical records generally do so. This is insufficient. *See, e.g., Mirza v. Garnet Health*, No. 20-CV-00556 (PMH), 2022 WL 826410, at *2, n. 6 (S.D.N.Y. Mar. 17, 2022) ("In order to refute Defendants' proposed facts properly, Plaintiff was required to cite and submit admissible evidence for the Court's

---

[7] Although Plaintiff does not attempt to rely on it, the Court notes that Plaintiff's verified Amended Complaint may be considered an affidavit for purposes of summary judgment. *See, e.g., Newsome v. Miller*, No. 18-CV-6756 CJS, 2024 WL 3415363, at *9 (W.D.N.Y. July 15, 2024) (collecting cases holding that verified complaint may be treated as affidavit where plaintiff fails to oppose summary judgment motion). However, in light of Defendants' detailed submissions in support of their motion, including the video recording, the Court finds that the bald assertions in the Amended Complaint, many of which are directly refuted by the video evidence as discussed below, are insufficient to create a triable issue of fact.

consideration. Plaintiff did not comply with this requirement. Rather, with random citations to evidence that may or may not have been submitted to the Court, the Court is left to speculate ab0out the documents to which Plaintiff refers. Notwithstanding the leniency afforded *pro se* litigants, Plaintiff "cannot simply dump ... [papers] on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain ....") (citations omitted), *aff'd sub nom. Mirza v. Orange Reg'l Med. Ctr*., No. 22-815-CV, 2024 WL 3042239 (2d Cir. June 18, 2024).

Nevertheless, the Court has reviewed the entire video and disagrees with Plaintiff's characterizations. For example, the video does not show any corrections officer "beating" or striking Plaintiff inside the cell after he was handcuffed (or at any other time), nor does it show any corrections officer inserting a finger or foreign object into Plaintiff's anus inside the cell (or at any other time), contrary to what Plaintiff alleges in his Amended Complaint. The video also does not indicate that Plaintiff was paralyzed after the cell extraction, or that he had any visible injuries. Nor does the video indicate that Nurse Busch failed to examine Plaintiff after the cell extraction, or that she failed to report his injuries.

Rather, the video may be briefly summarized as showing the following: At the beginning of the cell extraction, Plaintiff is standing inside his locked cell, standing at the doorway and using a mattress to block the entrance;[8] once the cell door is opened, the officers swiftly push into the cell and pin Plaintiff to the floor, with the green mattress, which was propelled backward along with Plaintiff when the officers pushed their way in, at least partially sandwiched between Plaintiff's body and the officers' bodies; with Plaintiff

[8] There is a cell shield and some type of screen over the cell wall, but Plaintiff can be seen standing to the right side of the doorway, viewed from the hallway, holding the mattress in front of the door, presumably to block the chemical agent spray.

pinned to the floor, the officers then remain still, while giving verbal commands to Plaintiff to stop resisting; while this is happening, there does not appear to be any movement of the officers' bodies that would be consistent with anyone striking Plaintiff or inserting anything into his anus;[9] moreover, since Plaintiff is wearing a smock, which covers him from his shoulders to his knees, and is partially covered by his mattress, it does not appear that the officers could access Plaintiff's anus without removing the mattress and pulling up his smock, which the video does not show them doing; the officers then stand up, pull Plaintiff to his feet, and lead him, handcuffed behind his back, out of the cell.

The video then depicts Plaintiff walking down a hallway with the officers, with Plaintiff declaring that he "cannot feel his legs." However, while large corrections officers are on either side of Plaintiff as they travel down the hallway, holding Plaintiff's arms, it does not appear they are dragging Plaintiff. Indeed, at 6:44-6:45 of Video 6,[10] it is evident that Plaintiff is walking under his own power. At 7:39-7:53 the video also shows Plaintiff backing out of a shower, and then walking under his own power, albeit while proclaiming that he cannot feel his legs.

The video further shows that, after leaving the cell, Plaintiff repeatedly makes complaints that he "can't feel his legs," that he "can't breathe," that his "neck" and "back" hurt, and that he feels that something is "poking him in his lung." Plaintiff also states that the officers are "choking him," though no one is choking him. Also, at 10:32 of Video 6,

---

[9] The Court notes that at certain points during cell extraction, portions of Plaintiff's body and the extracting corrections officers' bodies are not visible to the camera. However, while it is theoretically possible that something may have happened off camera that would constitute a constitutional violation, that is not Plaintiff's argument here. Rather, he maintains that the alleged constitutional violations are shown on the video.

[10] Defendants submitted two video files of the cell extraction, file 00006, which the Court will refer to as Video 6, and the much smaller file 00007, which the Court will refer to as Video 7.

Plaintiff states that "the officers keep punching my back," though it is clear that no one is punching him. Plaintiff, though, never complains that anyone inserted anything into his rectum or otherwise sexually assaulted him.

At 12:39 of Video 6, the officers lower Plaintiff's smock to his waist, to photograph him. It is evident that Plaintiff is not bleeding, and there are no injuries visible anywhere on the exposed portions of Plaintiff's body.

At 13:40 of Video 6, Plaintiff kneels under his own power while two officers re-attach the Velcro straps of his smock. At 16:10-16:55 of the video the officers stand Plaintiff back up and Nurse Busch walks around Plaintiff observing him while two officers hold him. The officers then tell Plaintiff that he can "kneel again," which Plaintiff does. At 18:12 of the video Busch, who is off camera, asks Plaintiff to "stand up for her," and Plaintiff responds that he cannot walk and that the officers "dragged him out" of his cell. However, Busch notes that he "walked." At 23:33 of the video Plaintiff states that he "needs medical attention," and Busch responds, "Diaz, I'm looking at you again, you're fine." To this, Plaintiff responds, "No, something's poking me in my lung, my neck," and Busch responds, "That's not true, stop saying it," to which Plaintiff states, "Yeah it is true, ma'am, I'm gonna sue the shit out of you, I'm telling you right now I'm gonna sue the shit out of you. I promise you." At 25:00 of the video, Busch tells Plaintiff that the pain he claims to be feeling in his lung is probably a side effect of the chemical agents, and that he is not paralyzed. Plaintiff again responds that he is going to sue Busch.

At 21:25 of Video 6, the officers lower Plaintiff's smock to perform a body cavity search, at which time it can be seen that there are no visible injuries to Plaintiff's back. The officers then begin dressing Plaintiff. At 23:49 of the video, the officers stand Plaintiff

up again and it appears there are no visible injuries to the front of Plaintiff's body. The officers then place Plaintiff in a wheelchair to take him to a transport van. At 6:13-6:35 of the Video 7, Plaintiff can be seen walking under his own power to a van, then lifting his leg and stepping into the van.

In sum, the video is consistent with Defendants' affidavits and inconsistent with Plaintiff's claims in this action, and particularly his claims that the officers "beat" him inside the cell after he was handcuffed, that the officers sexually assaulted him inside the cell by inserting a finger or walkie-talkie antenna into his rectum,[11] that he was paralyzed by having something inserted into his rectum, and that Busch failed to examine him or misreported his condition after the cell extraction.

In this regard, the Court notes that at certain points during the video, portions of Plaintiff's body and the extracting corrections officers' bodies are not entirely visible to the camera. However, while it is theoretically possible that something may have happened off camera that would contradict Defendants' affidavits, that is not Plaintiff's argument here. Rather, Plaintiff maintains that the alleged constitutional violations are shown somewhere on the video.

Plaintiff's medical records also do not controvert Defendants' statement of facts in support of their motion. For example, medical notes from Auburn immediately following the cell extraction upon which Plaintiff relies[12] shows only that Plaintiff was complaining that he could not walk following the cell extractions, but that such complaint was

---

[11] None of the officers who performed the cell extraction are seen with a walkie talkie or radio.

[12] Plaintiff submitted this exhibit with one of his prior motions. Plaintiff did not submit any medical records with his responses to Defendants' summary judgment motion, but merely argues that unspecified medical records previously submitted to the Court support his position.

inconsistent with the medical examination. ECF No. 28 at p. 15 ("Has excellent muscle tone and patellar reflexes. . . . physical exam is incongruent [with] his claim of not being able to move his legs."); *see also*, ECF No. 89 at p. 66 ("All LE 'paralysis' now gone."). In any event, as already discussed, any complaint of paralysis by Plaintiff is refuted by the Attica video evidence which shows him walking after the cell extraction. The Court's review of the record also does not indicate medical records connecting any alleged blood in Plaintiff's stool to the cell extraction at Attica, contrary to what Plaintiff suggests.

Consequently, the Court accepts that facts stated in Defendants' "Movants' Statement" as true for purposes of this Decision and Order.

## DISCUSSION

Fed. R. Civ. P. 56

The parties have moved for summary judgment, pursuant to Fed. R. Civ. P. 56, which may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

Additionally, the movant must demonstrate, and not merely assert, that he is entitled to judgment under the relevant principles of law. *See, Baker v. Anschutz Expl. Corp.*, 68 F. Supp. 3d 368, 373 (W.D.N.Y. 2014) ("While the absence of any genuine dispute of material fact is a precondition for summary judgment, the crux of a summary judgment analysis is whether the movant has established entitlement to judgment as a matter of law.") (quoting 11–56 MOORE'S FEDERAL PRACTICE—CIVIL § 56.20 (Matthew Bender 2014)), adhered to on reconsideration, No. 11-CV-6119 CJS, 2016 WL 981858 (W.D.N.Y. Mar. 15, 2016); *see also*, *Darley v. U.S.*, No. 22-CV-00714 (PMH), 2025 WL 1159518, at *3 (S.D.N.Y. Apr. 21, 2025) ("Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. Simply put, the movant must separately establish that the law favors the judgment sought.") (citations omitted).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[13] To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom

---

[13] "The substantive law governing the case will identify those facts which are material and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Heard v. City of New York*, 319 F.Supp.3d 687, 692 (S.D.N.Y. 2018).

summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

"When parties cross-move for summary judgment, each motion is analyzed separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025) (quoting *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020)).

Section 1983

The Complaint purports to state claims for constitutional violations under Section 1983. To state a claim under Section 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, *respondeat superior* liability is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Eighth Amendment Excessive Force

The Eighth Amendment prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the Defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained.").

Prison officials are required to take reasonable measures to guarantee the safety of inmates in their custody. *Farmer v. Brennan*, 511 U.S. 825, 837 (1970). The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). "Failure to intercede results in liability where an officer observes excessive force being used or has reason to know that it will be." *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *Walsh v. Goord*, No. 07-CV-0246, 2007

WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer*, 511 at 837). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

Eighth Amendment Deliberate Indifference to a Serious Medical Need

To substantiate an Eighth Amendment claim for inadequate medical treatment, a prisoner must prove that the defendant was deliberately indifferent to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). As with Diaz's other Eighth Amendment claims, "[t]he standard for deliberate indifference includes a subjective component and an objective component." *Hill*, 657 F.3d at 122. "Subjectively, the official charged with deliberate indifference must act with a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted). "The objective component requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Id.* (internal quotation marks omitted).

The Second Circuit employs a two-part inquiry to determine whether an alleged deprivation is objectively serious. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Id.* at 279. The second inquiry asks, "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280.

PA Lahrs

Applying the foregoing legal principles to the facts set forth above, the Court finds that Defendants are entitled to summary judgment. To begin with, Plaintiff has not come

forward with any evidence that Lahrs was deliberately indifferent to his serious medical needs. Lahrs' only role in the incident was to provide a medical opinion, from her review of Plaintiff's chart, that Plaintiff had no medical contraindication to the use of chemical agents. Lahrs has indicated that Plaintiff had no such contraindication, and Plaintiff has not provided any evidence to the contrary. Indeed, Plaintiff does not even claim that the use of chemical agents constituted excessive force.[14] Lahrs has properly supported her motion for summary judgment by demonstrating her entitlement to judgment under the relevant principles of law, and Plaintiff has failed to come forward with evidence raising a triable issue of fact. Lahrs is therefore entitled to summary judgment.

Officers Koepf, Foster, Ratajczak, and Mezydlo

Plaintiff next asserts that during the few seconds that Officers Koepf, Foster, Ratajczak, and Mezydlo were inside his cell during the cell extraction, they "beat" him while he was handcuffed and sexually assaulted him anally. However, these alleged events are not shown on the video, contrary to what Plaintiff alleges. Nor does the Court believe that any reasonable juror viewing the video could conclude otherwise, apart from rank speculation. Officers Koepf, Foster, Ratajczak, and Mezydlo have properly supported their motion for summary judgment by demonstrating their entitlement to judgment under the relevant principles of law, and Plaintiff has failed to come forward with

[14] Rather, Plaintiff baldly asserts in his Amended Complaint that he was having a "mental health crisis" and that Defendants as a group should not have extracted him from his cell before seeking advice from a psychologist. However, there is no indication that Lahrs was asked to provide an opinion concerning whether Plaintiff had any psychological contraindication to a cell extraction, or that she ignored evidence of such a contraindication. Nor has Plaintiff provided any evidence that any other defendant was deliberately indifferent to information that subjecting him to a cell extraction would pose a danger of psychological harm to him, let alone a harm sufficient to meet the objective prong of an Eighth Amendment claim.

evidence raising a triable issue of fact. Consequently, Koepf, Foster, Ratajczak, and Mezydlo are entitled to summary judgment.

Officer Berry, Sergeant Snyder, and Lieutenant Skawienski

Plaintiff maintains that Officer Berry, who operated the camera during the cell extraction, and Sergeant Snyder and Lieutenant Skawienski, who supervised the cell extraction, failed to intervene to stop the alleged beating and sexual assault by Officers Koepf, Foster, Ratajczak, and Mezydlo inside his cell. However, as just discussed, Plaintiff has not provided any evidence that the alleged beating or sexual assault took place. Berry, Snyder, and Skawienski have properly supported their motion for summary judgment by demonstrating their entitlement to judgment under the relevant principles of law, and Plaintiff has failed to come forward with evidence raising a triable issue of fact. Accordingly, Berry, Snyder, and Skawienski are entitled to summary judgment.

Nurse Busch

Plaintiff maintains that Busch was deliberately indifferent to his serious medical needs by failing to examine him after the cell extraction and by lying about his injuries to cover up the alleged constitutional violations by the defendant officers. In particular, Plaintiff indicates that Busch lied about the fact that Plaintiff was "paralyzed" and unable to walk following the cell extraction. However, contrary to what Plaintiff baldly states, the video indicates that Busch visually observed and examined Plaintiff for an extended period of time between the cell extraction and the placement of Plaintiff on the transport van,[15] and that Plaintiff was able to walk and had no visible injuries, despite his repeated

[15] In addition to the video showing Busch walking around Plaintiff and visually examining him, she can be heard speaking to Plaintiff later off camera, as noted earlier. Accordingly there is no support for Plaintiff's claim that she refused to examine him.

statements that he could not feel his legs and was unable to stand.[16] Busch has properly supported her motion for summary judgment by demonstrating her entitlement to judgment under the relevant principles of law and Plaintiff has failed to come forward with evidence raising a triable issue of fact. Consequently, Busch is entitled to summary judgment.

CONCLUSION

Defendants' Summary Judgment Motion (ECF No. 153) is granted, and Plaintiff's cross-motion (ECF No. 156) is denied. All other pending motions are denied as moot. The Clerk is directed to enter judgment for Defendants and close the action. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any request to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

November 2, 2026
Rochester, New York

Charles J. Siragusa

CHARLES J. SIRAGUSA
UNITED STATES DISTRICT JUDGE

---

[16] Plaintiff is not claiming that he had intermittent paralysis. Rather, maintains that he was instantaneously and continuously paralyzed the instant a finger or walkie talkie antenna was supposedly inserted into his anus inside the cell. (There is no evidence that any officer inside the cell had a walkie talkie or radio, and no indication that anyone digitally penetrated Plaintiff). However, this claim is plainly refuted by the video which clearly shows Plaintiff walking at various times, most notably when leaving the shower area and when going to the transport van.